IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MITCHELL SIMMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-24-291-DES |
| | ) |
| FRANK BISIGNANO,[1] | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

The claimant Mitchell Simmer requests judicial review pursuant to 42 U.S.C. § 405(g) of the denial of benefits by the Commissioner of the Social Security Administration. He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 24, 1967. (Tr. 751). He has completed school through the eleventh grade and worked for several years performing various jobs as a laborer, delivery person, and lawn sprinkler installer. (Tr. 439, 714-15, 719-20, 758, 762). Claimant alleges he has been unable to work since January 2009. When he applied for disability benefits in 2018, Claimant alleged he became disabled at the age of 41, due to physical health problems and "depression." (Tr. 689, 756). On multiple occasions, he told examiners he had to stop working due to pain in various joints. (Tr. 1226, 1310, 2554, 2557). Despite initially focusing on his physical health problems as a barrier to employment, Claimant now only focuses on his mental health issues. Likewise, this Opinion and Order will focus on Claimant's mental impairments, with some additional background for context. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [Claimant's] contentions that have been adequately briefed for our review.").

### Procedural History

Claimant applied for supplemental security income (SSI) under Titles II and Title XVI of the Social Security Act in December 2018, claiming disability as of that date. (Tr. 689, 696). After exhausting his administrative remedies, Claimant commenced a civil action in the United States District Court for the Eastern District of Oklahoma and the Court remanded for additional proceedings. (Tr. 1551-64). On remand, the ALJ found Claimant was not disabled prior to December 28, 2018, but became disabled on that date (Tr. 1482-98). He now seeks judicial review of the ALJ's May 14, 2024, decision. This Court has jurisdiction under 42 U.S.C. § 1383(c)(3).

**Decision of the Administrative Law Judge**

In the May 14, 2024, decision, the ALJ acknowledged that he had considered the evidence in its entirety. (Tr. 1498). The ALJ made his decision at step five of the sequential evaluation. At step two, the ALJ found that beginning on December 28, 2018, Claimant had the following severe impairments: diabetes mellitus type II, borderline intellectual functioning, unspecified neurocognitive function, mild degenerative changes of his cervical spine, bilateral carpal tunnel syndrome, degenerative disc disease of lumbar spine, and reading disorder (CFR 404.1520(c) and 416.920(c)). Further, the ALJ found that prior to December 28, 2018, Claimant did not have an impairment or combination of impairments that met or was medically equal to the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 1492).

Next, the ALJ found that prior to December 28, 2018, Claimant's impairments did not meet a listing. *Id.* He explained that prior to this date Claimant retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) with the following qualifications:

> Limited to simple, repetitive, and routine task. The claimant can have occasional contact with coworkers and supervisors but no contact with the general public, working with things rather than people. No strict production standards such as fast paced integral team assembly line or meat processing type work. However, the hypothetical person could remain on task and attentive to duties for two hours before needing a 15-minute break. The hypothetical person would have a limited ability to read, write, and use numbers.

(Tr. 1493).

However, after December 28, 2018, the ALJ found that Claimant has been unable to perform any past relevant work because the demands of his past relevant work exceeded his residual functional capacity, he was an individual closely approaching advanced age, he has a

limited education, and transferability of job skills was not an issue in this case because Claimant's past relevant work was unskilled. (Tr. 1497). Therefore, the ALJ concluded that beginning on December 28, 2018, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that he can perform. *Id.*

### Review

As discussed *supra*, the ALJ found Claimant was not disabled for purposes of his Title II claim prior to his date last insured in December 2014, but became disabled much later, in December 2018, for purposes of his Title XVI claim. Claimant now appeals that partially favorable decision, raising one solo issue related to the ALJ's evaluation of evidence prior to the date last insured. However, Claimant must carry his burden to prove disability before December 2014. *Cowan v. Astrue,* 552 F.3d 1182, 1185-86 (10th Cir. 2008) *(*citing *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987)). On this limited record, the ALJ reviewed and considered all relevant evidence, as well as additional evidence for historical and informational purposes. Substance evidence supports the ALJ's decision—particularly regarding the ALJ's finding that Claimant had no medically determinable mental impairment prior to December 31, 2014.

The undersigned Magistrate Judge addresses Claimant's assertion that the ALJ failed to properly evaluate his mental impairments prior to December 2018. The record reveals, however, the ALJ thoroughly evaluated and discussed the evidence. (Tr. 1482-1498). Indeed, the record before the ALJ included examination findings and medical opinions from multiple physicians and State agency consultative psychologists, as well as the prior administrative record. *Id.*

The relevant medical evidence from the alleged onset date in January 2009, through the date last insured in December 2014, was very limited. Claimant submitted no records from 2009 through 2011. In 2012, 2013, and 2014, he followed with a primary care clinic, though he only

discussed chronic physical health problems, including hypertension, hypothyroidism, and diabetes. (Tr. 834-84). During routine examinations, Claimant denied any psychiatric or cognitive concerns, and he repeatedly appeared alert and oriented, with an appropriate mood and affect and normal insight and judgment. (Tr. 836, 840-842, 846-48, 852-54, 858-59, 864-65, 869-70, 874-75, 877-79, 883-84).

Evidence after the date last insured, December 31, 2014, through the Title XVI application date, December 28, 2018, documented that Claimant continued to follow with the same primary care clinic. (Tr. 887-989). In late 2015, he began complaining of a depressed mood and anxiety, though he remained alert and oriented, with an appropriate mood and affect and normal insight and judgment. (Tr. 893-95). Claimant was started on medications for depression and anxiety, and he generally remained stable on mental status examinations. (Tr. 895-96, 900, 909, 914, 919, 932, 961, 972, 977, 982, 986). On one occasion in early 2017, he had a depressed mood, poor attention and concentration, and slow responses. (Tr. 925). Otherwise, Claimant exhibited no psychiatric or cognitive deficits during routine appointments. (Tr. 895, 900, 909, 914, 919, 932, 961, 972, 977, 982, 986).

Claimant applied for disability benefits in December 2018. (Tr. 689, 696). By that time, he was still following the same primary care clinic. (Tr. 986-95). While he endorsed symptoms of depression and anxiety (Tr. 988), he continued to be alert and oriented, with an appropriate mood and affect. (Tr. 989, 993). His mental health issues were treated quite conservatively with medications. (Tr. 989).

Over the course of the next several years, Claimant continued to follow with various providers, mostly for his physical health issues. (Tr. 992-1225, 1233-1309, 1323-55, 1361-1458,

1701-2542). In connection with the disability application process, Claimant underwent physical and psychological consultative examinations in 2019. (Tr. 1226-27, 1310-13).

In June 2019, a state agency psychological consultant, Stephen Scott, Ph.D., reviewed Claimant's case. (Tr. 462-68, 478-84). He acknowledged Claimant had a severe impairment of depression. (Tr. 462, 478), though he found Claimant could understand remember, and carry out simple and some more detailed instructions with routine supervision, relate to supervisors and others on a superficial basis, and adapt to a work environment. (Tr. 468, 484).

A month later, in July 2019, a second State agency psychological consultant, Edith King, Ph.D., also reviewed Claimant's case. (Tr. 496-503, 513-20). Dr. King affirmed the prior findings. (Tr. 496-503, 513-20). However, later, in November 2019, Dr. King clarified that, for purposes of the Title II claim, there was insufficient evidence available to evaluate Claimant's functional abilities prior to the date last insured in December 2014. (Tr. 551).

Later, in 2023, Claimant underwent one more physical consultative examination and two more psychological consultative examinations. (Tr. 2543-48, 2552-54, 2556-58). While intelligence testing, performed in 2023, showed Claimant had a full-scale IQ score of 71, which fell in the borderline range of intelligence, one of the examiners, Larry Vaught, Ph.D., opined Claimant would have marked difficulties in understanding, remembering, and carrying out complex instructions, but only moderate difficulties with simple instructions and social interactions. (Tr. 2560-62).

As detailed above, the record evidence from the alleged onset date in January 2009, through the date last insured in December 2014, was quite limited. Claimant only submitted records from his primary care clinic that showed treatment for physical health issues during that time. (Tr. 834-84). During those relevant routine appointments in 2012, 2013, and 2014, Claimant never

mentioned any mental health issues. (Tr. 834-84). And what is more, during those same appointments, Claimant did not exhibit any psychiatric or cognitive deficits during brief mental status examinations. (Tr. 836, 842, 848, 854, 859, 865, 870, 875, 879, 884).

Claimant did not complain of mental health issues until 2015—and at that time, he only focused on symptoms of depression and anxiety. (Tr. 893). He briefly tried medications but ultimately stopped pursuing any type of mental health treatment. (Tr. 896, 920, 1310).

In 2018, when applying for disability, Claimant reported some issues with depression. (Tr. 756). Yet even then, he did not report having cognitive deficits that would interfere with employment. (Tr. 756). At most, he referenced a history of special education services, noting he only completed high school through the eleventh grade. (Tr. 757). However, he still reported a history of work full-time work activity and the ability to drive. (Tr. 758, 762-64, 773).

In reviewing the limited time period relevant to Claimant's Title II claim, the ALJ discussed the relevant record evidence. (Tr. 1489-92). He acknowledged Claimant's testimony that he only went to school through the eleventh grade, as well as his testimony that he had trouble with reading. (Tr. 1489 (citing Tr. 421-48 (January 2021 hearing testimony))). And, as the ALJ explained, all the objective mental evidence from the relevant period was within normal limits. (Tr. 1490-92). Indeed, during primary care appointments prior to December 2014, Claimant remained alert and oriented, with an appropriate mood and affect, and normal insight and judgment. (Tr. 836, 842, 848, 854, 859, 865, 870, 875, 879, 884).

Claimant asks the Court to reverse for a reward of benefits, or in the alternative, remand the case for further proceedings. (Pl. Br. 14). Yet, he has failed to show how the evidence supports the finding of a medically determinable mental impairment during the limited period at issue. The ALJ already complied with a prior Court order and developed the record, yet reasonably found

there was no evidence prior to December 31, 2014, to establish a medically determinable mental impairment. A remand for further evaluation of the relevant Title II period would serve no useful purpose, where there is no objective evidence of a mental impairment prior to the date last insured.

## Conclusion

The Court finds that correct legal standards were applied by the ALJ, and substantial evidence supports the ALJ's findings. Accordingly, the decision of the Commissioner is hereby **AFFIRMED.**

**IT IS SO ORDERD this 8TH day of September, 2025.**

_____
D. Edward Snow
United States Magistrate Judge